**STATE of Missouri ex rel., MISSOURI DEPARTMENT OF NATURAL RE-SOURCES, Plaintiff–Appellant,**

v.

**TURKEY CREEK, INC., Defendant–Respondent.**

No. 20942.

Missouri Court of Appeals,
Southern District,
Division One.

April 25, 1997.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kara L. Johnson, Asst. Atty. Gen., Jefferson City, for plaintiffs-appellants.

Douglas R. Kennedy, Kennedy & Kennedy, Poplar Bluff, for defendant-respondent.

PREWITT, Judge.

Plaintiff-Appellant sought injunctive and other relief against Defendant regarding two dams owned by Defendant. The trial court determined that the dams were less than thirty-five feet in height, thus making them not subject to regulation by the Missouri Department of Natural Resources, under the Dam and Reservoir Safety Law, §§ 236.400 to 236.500, RSMo 1994.

---

■ Review is under Rule 73.01(c). Under that rule, due regard is given to the trial court to judge the credibility of witnesses. Rule 73.01(c)(2). For further interpretation of the standard of review set by that rule, see *Chaney v. Clay,* 906 S.W.2d 903, 904 (Mo. App.1995). This Court presumes that the trial court's judgment is correct and Plaintiff, as Appellant, has the burden to show that it is not. *Shadow Lake of Noel, Inc. v. Supervisor of Liquor Control,* 893 S.W.2d 835, 838 (Mo.App.1995).

■ Plaintiff presents one point relied on, asserting there that:

The trial court erred in determining that the two dams in question were less then (sic) 35 feet in height and not subject to the Dam and Reservoir Safety Law by improperly locating the toes of the dams to be a point where two fill areas intersect contrary to the Dam and Reservoir Safety Law which defines the toe of the dam to be the intersection of fill and natural ground.

We first observe that the trial court made no specific findings as to where the "toes" of the dams were. The judgment found only that the dams were less than thirty-five feet high. Experts for Plaintiff and an expert for the Defendant gave testimony which conflicted as to where the toes were and whether the dams were thirty-five feet or more in height. Under § 236.400(5), a definition of "dam" is given. It states:

"**Dam,**" any artificial or manmade barrier which does or may impound water, and which impoundment has or may have a surface area of fifteen or more acres of water at the water storage elevation, or which is thirty-five feet or more in height from the natural bed of the stream or water course measured at the downstream toe of the barrier or dam, if it is not across a streambed or watercourse, together with appurtenant works. Sections 236.400 to 236.500 shall not apply to any dam which is not or will not be in excess of thirty-five

feet in height or to any dam or reservoir licensed and operated under the Federal Power Act.[1]

None of the experts attempted to measure from the natural bed of the stream or watercourse, as it was inundated with water. Plaintiff offered expert witnesses who stated that they started at a point above the natural bed and their measurement still exceeded thirty-five feet. The parties agree as to the crest of the dam, the dispute being where is the "toe." Regulations adopted by the "Dam and Reservoir Safety Council" state: "Toe or toe of slope means the line of the fill [dam embankment] slope that intersects the natural ground." 10 C.S.R. 22–1.020(56).[2]

Those regulations contain a somewhat different definition of "dam" from that in the statutes. 10 C.S.R. 22–1.020(13) states:

(13) Dam means any artificial or manmade barrier which does or may impound water and which impoundment has or may have a surface area of fifteen (15) or more acres of water at the water storage elevation or which is thirty-five feet (35') or more in height from the natural bed of the stream or watercourse or lowest point on the toe of the dam (which-ever is lower) up to the crest elevation, together with appurtenant works. Sections 236.400 to 236.500 shall not apply to any dam which is not or will not be in excess of thirty-five feet (35') in height or to any dam or reservoir licensed and operated under the Federal Power Act.

The president of Defendant testified that the spillway pipes for the dams were constructed in trenches six feet below the natural surface of the land. Plaintiff asserts that even if this is true the result is not changed, as the dam still exceeds thirty-five feet in height as the end of the pipe intersects natural ground. The parties agree that if the measurement had been made from the bottom of the spillway pipe to the crest, the distance would exceed thirty-five feet. Spill-

---

**1.** We note that the definition initially refers to the height requirement as "thirty-five feet or more." At the end, reference is made to "in excess of thirty-five feet." As there was no evidence that the dam is exactly thirty-five feet, we do not have to be concerned with this apparent variance.

**2.** The authenticity and effect of this and the other regulations discussed in this opinion are not in dispute. Consequently, we treat them as authorized and not in conflict with the Dam and Reservoir Safety Law.

ways and pipelines are classified as "appurtenant works" to a dam. 10 C.S.R. 22–1.020(4). Even if the spillway pipe is part of the dam, that does not mean that the measurement should necessarily be made from it.

Defendant agrees that the pipe intersects the natural ground, but contends that occurs past and below the toe. Although not altogether clear, it appears that under the statute and perhaps the regulations that the measurements, are to be made from the "toe," and the spillway pipe could be below the toe. Whether, in fact, it is or not, we cannot tell from the record. Plaintiff states in its reply brief that photos "confirm that the spillway pipe is not in a trench but above ground at the toe of the dam." However, no citation is made to the record or any exhibits. The record does not show that any photographs were introduced into evidence, and none were filed here.

An examination of the testimony of Defendant's expert, Metz Skelton, does not convince us, as Plaintiff argues, that he necessarily measured from the wrong point. Skelton testified that he followed the regulations, including the definition "as to toe and as to measuring the height of the dam," with the apparent exception that he measured below the actual toes to "give the Department of Natural Resources every benefit of the doubt as far as the height of the dam is concerned." He testified during cross-examination that he met Plaintiff's two experts at the dams about three weeks prior to trial. They agreed as to the crests, but he disagreed with them regarding the location of the toes.

Based on this record, we cannot say as a matter of law that Skelton started at an incorrect point on either dam. The case then appears to turn on his credibility. That being so, by deferring to the judgment of the trial court, which necessarily must have believed Defendant's expert, we have no firm impression that the judgment is erroneous.

As no specific findings of fact were made, we presume that the trial judge believed Defendant's president as to the spillway pipe trench and found Defendant's expert to be correct as to where the toe of the dam was. "All fact issues upon which no specific find-

ings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(3).

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.